ELAINE LYONS, Plaintiff-Appellant, *v.* HERITAGE HOUSE ENTERPRISES *et al.*, Defendants-Appellees.

Fourth District    No. 16316

Opinion filed January 14, 1981.

TRAPP, P. J., dissenting.

James M. Drake, of Springfield, for appellant.

Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, of Springfield (Carol J. Hansen Fines, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The narrow issue presented in this case is whether cancer of the uterus is a handicap within the meaning of article I, section 19, of the 1970 Illinois Constitution, and the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1977, ch. 38, pars. 65—22, 65—23). The plaintiff, Elaine Lyons, brought suit against the defendants, Heritage House Enterprises, and Leonard W. Lambert, an officer of the corporation, for injuries allegedly caused by defendants' discriminatory termination of her employment. The trial court dismissed plaintiff's first amended complaint for failure to state a cause of action after the trial court determined, as a matter of law, that cancer did not fall within the meaning of the term "physical handicap" as set forth in either the Illinois Constitution or the Equal Opportunities for the Handicapped Act.

We disagree, and reverse.

A brief discussion of the relatively uncomplicated facts of this case is necessary at this point. On December 28, 1979, plaintiff filed her amended complaint in the Sangamon County Circuit Court. The com-

plaint alleged that plaintiff was originally employed by the defendant, Heritage House Enterprises, in 1966 in a supervisory capacity. In 1972, plaintiff became a management employee of the defendant as its kitchen operations supervisor. Plaintiff was responsible for hiring and training kitchen personnel, menu preparation, and general supervision of kitchen activities for eight restaurants owned by the defendant corporation in various parts of the United States. Defendant, Leonard W. Lambert, was the vice-president and manager of operations for the defendant corporation.

During the summer of 1978, plaintiff was diagnosed as having cancer of the uterus. Plaintiff was advised by physicians that it would be necessary for her to undergo five weeks of radiation therapy, together with a surgical procedure to remove her uterus. The surgery was to be performed one month after the radiation therapy concluded. Radiation therapy was administered in July 1978, and was scheduled so that plaintiff would not be absent from work. Plaintiff alleged that she was able to continue her work without interruption during this period. Plaintiff further indicated that she and her physician notified the defendant of her medical condition.

On July 28, 1978, the defendant, Leonard W. Lambert, called plaintiff into his office and informed her that she was being removed from the corporate payroll for a six-month period. She was also informed that any company insurance benefits were being cancelled and that her company-owned automobile was being taken from her. Defendant Lambert further advised her that her position with the corporation would not be held open to her upon her return following the six-month period. Defendant also indicated that a lesser position could not be guaranteed to her. Plaintiff alleged that she then asked defendant Lambert if she was being fired or discharged, to which Lambert replied, "We prefer to play it at low key."

Plaintiff contends that her discharge was a discriminatory action based on her physical handicap. As damages, plaintiff alleged that she was deprived of her salary and other fringe benefits including health and medical policies of insurance, and a life insurance policy in an aggregate amount in excess of $40,000. Plaintiff also contends that she suffered severe emotional and mental distress all to her detriment.

In response, the defendants filed a motion to dismiss the amended complaint arguing that plaintiff's purported ailment was not a physical handicap. The trial court agreed and dismissed the case. The court held that plaintiff's physical condition did not constitute a handicap so as to entitle her to relief for employment discrimination on the basis of article I, section 19, of the 1970 Illinois Constitution or the Equal Opportunities for the Handicapped Act.

Article I, section 19, of the Illinois Constitution of 1970 states:

"All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer."

The Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1977, ch. 38, pars. 65—22, 65—23) states, in part:

"The term 'physical or mental handicap' means a handicap unrelated to one's ability to perform jobs or positions available to him for hire or promotion or a handicap unrelated to one's ability to acquire, rent and maintain property. * * *." (Par. 65—22.)

"It is an unlawful employment practice for an employer:

(1) to refuse to hire, to discharge, or otherwise to discriminate against any individual with respect to his terms, conditions or privileges of employment, otherwise lawful, because of such individual's physical or mental handicap, unless it can be shown that the particular handicap prevents the performance of the employment involved." Par. 65—23(1).

In dismissing the amended complaint, the court placed substantial reliance on the reasoning set forth in the recent appellate opinion in *Advocates for the Handicapped v. Sears, Roebuck & Co.* (1978), 67 Ill. App. 3d 512, 385 N.E.2d 39. In *Advocates*, the plaintiff filed suit for injuries allegedly caused by Sears' discriminatory hiring practices. Plaintiff sought declaratory and injunctive relief as well as damages. Plaintiff alleged that for approximately 10 years prior to the initiation of the lawsuit, he had suffered from nephritis. Due to the ailment, he had received dialysis treatment for two years at the conclusion of which he underwent a kidney transplant. The surgical procedure was successful and the attending physicians agreed that the plaintiff could return to work. He was, however, restricted from any heavy lifting.

Thereafter, plaintiff applied for employment with Sears and passed all pre-employment tests. He was advised that, pending clearance from the medical department, a position was available for him. The medical department failed to certify him, however, allegedly for the reason that he was an uninsurable risk under the Sears self-insurance program. Plaintiff was not hired by the company.

In *Advocates*, plaintiff contended that Sears violated both article I, section 19, of the Illinois Constitution of 1970, and the Equal Opportunities for the Handicapped Act. The trial court dismissed the case on the basis that plaintiff was not a "handicapped person within the meaning of the Equal Opportunities for the Handicapped Act and thus was neither entitled to the protection of the Act, nor a member of the purported

class." (67 Ill. App. 3d 512, 514, 385 N.E.2d 39, 41.) The appellate court affirmed the trial court's ruling.

The First District court concluded that neither the constitution nor the statute provided an effective definition of the term physical or mental handicap. The court then determined that it was obligated to look to the ordinary and popular definition of that term in order to ascertain whether plaintiff was entitled to protection. In this regard the court stated:

"We believe, however, that in enacting this legislation, the General Assembly had in mind a class of physical and mental conditions which are generally believed to impose severe barriers upon the ability of an individual to perform major life functions.

* * *Thus, the question of whether a person is handicapped turns upon whether the character of the disability is one which is generally perceived as one which severely limits the individual in performing work-related functions." 67 Ill. App. 3d 512, 516-17, 385 N.E.2d 39, 43.

The court then indicated that although plaintiff had a history of nephritis, the medical condition did not result in impairment other than that plaintiff was restricted from lifting heavy weights. The court reasoned that the disability alleged was not one which fell into the commonly understood meaning of the term "physical handicap."

Initially, it should be pointed out that there is some confusion with regard to whether the plaintiff in this case was totally discharged by the defendant. Plaintiff alleged that when defendant Lambert told her that she was being removed from the payroll for a six-month period she took it to mean that she was actually being discharged and specifically asked defendant Lambert whether this was in fact the case. Lambert, however, responded equivocally when he replied, "We prefer to play it at low key." During oral argument, plaintiff took the position that she had been totally discharged. Defendants maintained that plaintiff was only removed from the payroll for a six-month period.

We conclude that this distinction is not controlling with regard to whether plaintiff has stated a cause of action. It is clear from her allegations that the termination of employment, for whatever period, was involuntary and as a result, plaintiff has been denied a salary and other fringe benefits including medical and life insurance coverage. By its own terms, the Equal Opportunities for the Handicapped Act does not require that an employee be absolutely discharged before relief may be sought. Indeed, the statute contemplates that an individual who is presently employed may maintain an action for discrimination which affects present wages, hours or conditions of employment. Therefore, irrespective of the length of termination, improper termination constitutes a cause of action.

Plaintiff argues that the reasoning of the First District court in *Advocates* is incorrect and should not be followed by this court. Defendant argues that the holding in *Advocates* is a correct interpretation of the law and that cancer is not one of the disabilities which is commonly understood to constitute a handicap. Initially, we must point out that this court is not presented with a fact situation in which the physical condition resulting from the cancer interferes with an individual's ability to perform job responsibilities. Under the plain language of the statute, termination of employment by reason of the physical disability under those terms would not be actionable because an employer may discharge an employee whose physical or mental condition prevents the performance of the employment involved.

■■ This case presents the narrow question of whether a person states a cause of action for discriminatory discharge when she alleges that her employment was terminated due to a cancerous physical condition which did not interfere with her job-related activities. We conclude that we are not in accord with the First District insofar as that court concludes that the determination of whether a person is handicapped turns on whether the character of the disability is one which is perceived as severely limiting an individual in performing work-related functions. Under that interpretation, a person would be handicapped only if he was unable to perform work-related functions. However, under the statute, such a fact situation would not be actionable because the statute expressly applies only to discriminatory employment practices which are based on physical conditions unrelated to one's ability to perform job-related tasks. By the same token, if, as the First District concluded in *Advocates*, the person is not handicapped, he is also precluded from maintaining an action based on a handicap which does not exist. This anomalous situation does not appear to be the intent of the legislature, and we therefore decline to follow the ruling of *Advocates*.

The allegations in this amended complaint are sufficient to allege a physical condition which can be equated with a physical handicap. Moreover, the allegations also support the conclusion that the defendants considered plaintiff's physical condition to be a physical handicap and controlled defendants' decision to terminate plaintiff's employment.

This finding is supported by a number of parallel sources. Similar Federal legislation is set forth in the Rehabilitation Act of 1973 (29 U.S.C. §701 *et seq.* (Supp. II 1978)). For purposes of that Act, a "physically handicapped individual" means any individual who has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment. The Act goes on to state that the term "handicapped individual" means any person who has a physical or mental

impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such an impairment. (29 U.S.C. §706(7)(A), (B) (Supp. II 1978).) The Federal legislation specifically includes cancer in its list of handicaps. 29 U.S.C. §706 (13) (Supp. II 1978).

The parallel Illinois statute is the Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, par. 851 *et seq.*). Under the Fair Employment Practices Act:

"It is an unfair employment practice:

(a) For an employer, because of the race, color, religion, sex, national origin, ancestry, or physical or mental handicap unrelated to ability of an individual, or an unfavorable discharge from military service, to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment ° ° °." Ill. Rev. Stat. 1977, ch. 48, par. 853(a).

The purposes of the Fair Employment Practices Act and the Equal Opportunities for the Handicapped Act are identical. The major intrinsic difference is the fact that one statute sets up an administrative mechanism by which unfair employment practices may be processed (Ill. Rev. Stat. 1977, ch. 48, par. 858 *et seq.*), while the other grants to individual citizens a personal right of action (Ill. Rev. Stat. 1977, ch. 38, par. 65—29). Since both statutes are related in purpose, it is proper to construe the one statute by reference to provisions of the other relating to the same subject matter for purposes of determining legislative intent. (*Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 137 N.E.2d 371.) This position is further supported by the fact that both the Equal Opportunities for the Handicapped Act and the Fair Employment Practices Act have been repealed effective July 1, 1980. Both Acts have now been replaced and incorporated into the Human Rights Act (Ill. Rev. Stat., 1979 Supp., ch. 68, par. 1—101 *et seq.*).

The guidelines of the Fair Employment Practices Commission indicate that for purposes of administering the Fair Employment Practices Act, cancer is not automatically excluded from coverage under the Act. In interpreting the Act, the guideline is stated as follows:

" 'Has a record of such a handicap' means that an individual may be completely recovered from previous physical or mental impairment. It is included because the attitude of employers, supervisors and co-workers toward the previous impairment may result in an individual experiencing difficulty in securing, retaining or advancing in employment. The mentally restored, those who have had

heart attacks or *cancer* often experience such difficulty." (Emphasis added.) (FEPC Guidelines on Discrimination in Employment, art. III, sec. 3.2(E) (1976).)

The foregoing authority suggests that analogous State and Federal statutes consider cancer to fall within the ambit of handicaps as defined by the respective statutes. It may also be noted at this point that section 1—103(I)(1) of the Human Rights Act (Ill. Rev. Stat., 1979 Supp., ch. 68, par. 1—103(I)(1)) defines "handicap" broadly:

"(I) 'Handicap means a determinable physical or mental characteristic of a person or the history of the characteristic which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic:

(1) For purposes of Article 2, is unrelated to the person's ability to perform the duties of a particular job or position, or is unrelated to the person's qualifications for employment or promotion."

Though we express no opinion as to whether this definition represents a continuation of or a departure from previous legislative intent, it is clear that plaintiff's alleged physical condition would fall within the definition of handicap as set forth in the Human Rights Act. Legislative intent and purpose cannot be said to have changed.

Since cancer is presently recognized in certain circumstances as a handicap, for purposes of the sufficiency of the complaint, plaintiff has stated a cause of action against defendants. We are fully aware that under the prevailing theory, Judge Cadigan was required to adopt and adhere to the precedent set forth in *Advocates.* The trial judge did that which he was required to do even though we ultimately reject the precedent which resulted in dismissal of the complaint.

The order of the circuit court of Sangamon County is reversed, and this cause is remanded to that court for further proceedings.

Reversed and remanded for further proceedings.

GREEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

I would affirm the judgment of the trial court for the reason that the allegations of the amended complaint contain no pleaded facts sufficient to suggest that within the meaning of the Constitution and statutes, the plaintiff is, in fact, a handicapped person as such is defined in *Advocates for the Handicapped v. Sears, Roebuck & Co.* (1978), 67 Ill. App. 3d 512, 385 N.E.2d 39, *appeal denied* (1979), 74 Ill. 2d 585, *cert. denied* (1979), 444 U.S. 981, 62 L. Ed. 2d 408, 100 S. Ct. 484.

I would further affirm the judgment of the trial court for the reason that a fair reading of the amended complaint fails to state allegations of any fact establishing that plaintiff was actually discharged, or that she was refused work following the surgery alleged. See *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91.