JOHNNY E. CUERTON, Plaintiff-Appellant, *v.* ABBOTT LABORATORIES, INC., Defendant-Appellee.

Second District No. 82—229

Opinion filed December 9, 1982.

G. Douglas Grimes, of Stone & Grimes, of Waukegan, for appellant.

Steven L. Larson, of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Johnny E. Cuerton, filed a complaint at law against the defendant, Abbott Laboratories, Inc. (Abbott), alleging a breach of employment contract.

The complaint alleged the plaintiff had been employed by Abbott by verbal agreement from 1969 to December 1979; that their agreement included by law an implied duty of good faith and fair dealing; that the discharge of employees was limited by the provisions of rules and regulations promulgated by Abbott and that employees were entitled to certain medical and disability benefits; that despite Abbott's

knowledge that plaintiff was afflicted with tremors on the hand, Abbott on many occasions required plaintiff to perform work involving fine movements of the hands; that doctors and other medical staff employed by Abbott were aware of plaintiff's symptoms and failed either to provide or refer plaintiff to expert medical services; that Abbott discharged plaintiff from employment in December 1979, although plaintiff had been for some time and was then and there incapable of performing the duties of his employment and was in need of immediate medical and surgical treatment for his ailment, communicating hydrocephalus; that after his discharge, the plaintiff became personally liable for substantial medical bills for treatment he received for his condition due to the fact Abbott had wrongfully cancelled plaintiff's group employee benefits insurance policies and disability income benefits, although the plaintiff was at the time of discharge and for some time prior, incapable of performing the duties of his employment due to his illness.

Plaintiff claimed damage in the amount of $15,000 plus costs for his medical insurance and disability benefits and for future medical expenses, loss of earnings, and pain and suffering.

Abbott filed a motion to strike and dismiss with prejudice for failure to state a cause of action. (Ill. Rev. Stat. 1981, ch. 110, par. 45, recodified as Ill. Rev. Stat. 1981, ch. 110, par. 2—615.) The trial court granted Abbott's motion with leave to amend.

Plaintiff's amended complaint alleged in essence that Abbott, through its agents and employees, breached its implied duty of good faith and fair dealing by requiring plaintiff to perform work which had been prohibited by certain of Abbott's other agents and employees, in view of the plaintiff's hand tremors; that medical personnel employed by Abbott for its own benefit and advantage failed to properly diagnose plaintiff's condition and should have known that he was unable to perform the duties of his employment on a daily basis due to his illness; and that the aforesaid acts of Abbott violated the public policy of Illinois set forth in the Equal Opportunities for the Handicapped Act. (Ill. Rev. Stat. 1979, ch. 38, par. 65—21 through 65—31.) Abbott again filed a motion to dismiss the amended complaint and the plaintiff responded to the motion, contending that if the amended complaint fails to state a cause of action for wrongful discharge of an employee, then at least the complaint sets forth a cognizable cause of action for malpractice since liability is imposed on an employer under the doctrine of *respondeat superior* for malpractice committed by medical personnel which are provided to employees for the benefit or advantage of the employer. On February 16, the trial court ordered

the amended complaint be stricken with prejudice for failing to state a cause of action, and this appeal was taken from that judgment.

Plaintiff concedes that his employment relationship was "at will" since it was for an indefinite term and that, generally "at will" employees can be discharged for any reason or for no reason. (*Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 610.) Nevertheless the plaintiff contends—correctly so—that as a matter of law every contract includes a duty of good faith and fair dealing. (*Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42.) He contends the trial court erred in dismissing his amended complaint since pursuant to the general rule, it sets forth factual allegations which, if proven, would have established that Abbott breached its implied duty and entitled him to the relief sought. *In re Estate of Libchik* (1975), 27 Ill. App. 3d 331.

Plaintiff specifically notes that no Illinois case has clearly defined "good faith and fair dealing" in the employment context. He points to two Illinois cases, *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, *appeal denied* (1977), 66 Ill. 2d 642, and *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, which have considered conduct alleged to be in bad faith.

The court in *Stevenson* considered plaintiff's claim that his termination was a bad faith effort by his employer in order to avoid his conditional duty to pay pension benefits to him under the terms of a prior written pension agreement. That court heard testimony that, following a merger, the plaintiff's employer had closed down the corporate acquisitions division and terminated the plaintiff because his function had been taken over by the parent corporation, which already had an acquisition function for the entire system. Consequently, the court concluded the employer's decision to discharge the plaintiff was not made in bad faith; rather, it was based on sound business reasons. 51 Ill. App. 3d 568, 571, 573.

In *Criscione,* the court suggested that some "abusive pattern" on the part of the employer must be alleged. Plaintiff had appealed the dismissal with prejudice of his complaint to recover damages for his alleged wrongful and abusive discharge from defendant's employ. Plaintiff argued on appeal that the complaint properly stated a cause of action in both tort and contract because the dismissal violated public policy and was made in bad faith rather than for a legitimate business purpose. The plaintiff had alleged that upon his return to work after treatment for a bleeding ulcer, his employer embarked upon an abusive course of conduct designed to force him to quit and/or to create a cause for his discharge. Plaintiff alleged his employer transfer-

red him to a highly technical job without adequate preparation or training, verbally berated his subsequent poor performance in the position in front of management personnel, and demanded that he take a lesser paying job or be terminated. The court found the plaintiff's employment was "at will," and subject to termination at any time by either party, for or without cause. The court determined that plaintiff's cause of action, if any, had to arise out of a violation of a statute or of public policy. Plaintiff contended on appeal his termination did violate public policy, because he had been dismissed for no legitimate business reason after he developed a bleeding ulcer which did not impair his performance on the job.

The *Criscione* court noted the basic statements of Illinois employment policy were found in article I, sections 17 and 19 of the 1970 Constitution (Ill. Const. 1970, art. I, secs. 17, 19), which forbid discrimination in hiring and promotion based on race, color, creed, national ancestry, sex and mental or physical handicap. It found plaintiff's contention was a conclusion which was unsupported by the allegations of his complaint. The court found plaintiff failed to allege any connection between his ulcer and his performance and subsequent dismissal, or to state any facts relating to the nature of his work with Sears. The court concluded the plaintiff had stated no cause of action in tort against his employer. The court, recognizing that good faith is an element implied in every contract, nevertheless found there were no factual allegations in plaintiff's complaint indicating bad faith dealing or an abusive pattern on the part of his employer. Further, there were no allegations regarding an agreement between the plaintiff and his employer pertaining to pension benefits, or that plaintiff's rights to such rights had vested. 66 Ill. App. 3d 664, 667-69.

Most notably, however, the court refused to accept his argument that a dismissal of an at will employee that is not done for a legitimate business reason constitutes both a violation of public policy and a bad faith breach of contract. The court noted that "[a]n employee at will may quit his employment for any reason at any time and is not bound to make his decision on the basis of whether or not it is a good business decision. The obligation of the employer should be no more nor less." (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 669.) The court stated the rule in Illinois is that "an employment at will relationship can be terminated for 'a good reason, a bad reason, or no reason at all.' See *Loucks v. Star City Glass Co.* (7th Cir. 1977), 551 F.2d 745, 747.)" *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 669-70.

Plaintiff argues Abbott knew or should have known that he was ill

and unable to work, knew or should have known the cause of the illness, and knew or should have known he was in need of medical care. Nevertheless, in breach of its implied duty of good faith and fair dealing, Abbott discharged the plaintiff, thus depriving him of medical leave, sick leave, sick pay and medical insurance coverage, as well as potential disability benefits. Plaintiff additionally argues Abbott's conduct as alleged in the amended complaint violated public policy as set forth in the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1979, ch. 38, par. 65—21 *et seq.*). He notes two Illinois decisions that have recognized the tort of "retaliatory discharge," the foundation for which is the protection of public policy. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124; *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.

In response, Abbott argues that plaintiff's complaint fails to set forth any facts which would support a finding that the plaintiff was discharged in order to avoid having to pay him medical or disability benefits. Plaintiff's complaint does not allege he was discharged *because* of his illness, only that he had an illness and was discharged. Likewise, plaintiff does not allege he ever made—or Abbott refused to honor—claims for medical or disability benefits while he was employed.

Plaintiff's complaint alleges no facts which, if proven, would establish that Abbott had a duty to know of or to treat plaintiff's illness, only that Abbott failed to do so. Consequently, Abbott concludes that since plaintiff failed to make any factual allegations indicating bad faith dealing on the part of Abbott, no cause of action for breach of an "at will" employment contract was stated, and the trial court properly dismissed the complaint. *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664.

Abbott further argues that the plaintiff's complaint failed to state a cause of action in tort for retaliatory discharge. Abbott points out that the plaintiff's brief intermingles the theories of breach of contract and the tort of retaliatory discharge. Citing *Sargent v. Illinois Institute of Technology* (1979), 78 Ill. App. 3d 117, *appeal denied* (1980), 79 Ill. 2d 629, Abbott contends that the plaintiff cannot change the theory upon which his claim is based for the first time on appeal. The authority cited in *Sargent, Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, has been held inapplicable, however, when the issue in the appellate court is whether that "new theory" was properly set out in plaintiff's complaint in the first place. (*Krautstrunk v. Chicago Housing Authority* (1981), 95 Ill. App. 3d 529, 534-35, *appeal denied* (1981), 85 Ill. 2d 565.) Additionally, although sepa-

rate causes of action should properly be stated in separate counts (Ill. Rev. Stat. 1981, ch. 110, par. 33(2), recodified as Ill. Rev. Stat. 1981, ch. 110, par. 2—603(b)), the record does not indicate Abbott raised an objection to this defect below and, as the trial court did in *Criscione*, this court may make separate evaluations of the complaint as a whole in considering each of the claimed causes of action. 66 Ill. App. 3d 664, 667.

The thrust of the plaintiff's argument is essentially two-fold. First, that his allegations of Abbott's discharge of him after failing to correctly diagnose and treat his illness was sufficient to state a cause of action for breach of the implied duty of good faith and fair dealing which is inherent in every contract. Second, that his allegation that Abbott's discharge of him under the circumstances alleged a violation of a stated public policy of the State of Illinois (Ill. Rev. Stat. 1979, ch. 38, par. 65—21, *et seq.*) and was thus sufficient to state a cause of action for the recognized tort of "retaliatory discharge" as that tort was discussed in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, and *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124.

Plaintiff's arguments on both theories are without merit. As to the breach of implied contractual duty of good faith and fair dealing, the plaintiff makes no allegations which suggest that the plaintiff was discharged *because* he was ill, or that he had sought and been denied medical and/or disability benefits while he was employed by Abbott. It would appear from the plaintiff's own pleadings that he had been for some time and was then unable to perform the duties of his employment. Plaintiff seems to be taking the position that Abbott's failure to initiate the care and treatment of an ailment which was preventing the plaintiff from either partially or entirely performing his job was in bad faith, unfair and, ultimately, a breach of his oral "at will" employment contract with Abbott.

As pointed out by Abbott, the plaintiff makes no allegations his illness occurred on the job or was work-related in any manner, or that his illness qualified him to receive the medical benefits to which he alleged he was entitled. Further, if the plaintiff's illness did arise out of a work-related incident, there is no common law cause of action for the alleged malpractice of a company physician in treating another employee of the company, since our supreme court has held that the Workers' Compensation Act provides the sole means of recovery for alleged malpractice by a company physician in treating an employee of the company. (*McCormick v. Caterpillar Tractor Co.* (1981), 85 Ill. 2d 352.) Similarly, the plaintiff has not alleged that the availability of medical services provided by Abbott prevented him from seeking

other independent medical services. In sum, we conclude the plaintiff's complaint failed to state a cause of action under the theory of breach of contract.

Likewise, the plaintiff's complaint fails to state a cause of action under the tort theory of retaliatory discharge. The *Kelsay* and *Palmateer* cases indicate that a cause of action for retaliatory discharge has been stated if the employer has discharged the employee in retaliation for the employee's activities, and the discharge was in contravention of a clearly mandated public policy which favored the activity on which the discharge was predicated. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.) Plaintiff here has made no allegation of retaliatory action on the part of Abbott, and the public policy plaintiff relies on, the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1979, ch. 38, par. 65—21 *et seq.*) was repealed and replaced by the Illinois Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*), which became effective July 1, 1980, slightly over a year before the instant complaint was filed.

Neither party has argued whether the complaint states a cause of action under that act; therefore, we do not consider whether it does. Even under the former act, a physical handicap was defined *inter alia* as a "handicap unrelated to one's ability to perform jobs ***." (Ill. Rev. Stat. 1979, ch. 38, par. 65—22.) The act made it unlawful for an employer to discharge any individual because of such individual's physical or mental handicap, "unless it [could] be shown that the particular handicap prevents the performance of the employment involved." (Ill. Rev. Stat. 1979, ch. 38, par. 65—23(1).) Plaintiff's own allegations make it clear his illness prevented him from performing his job for some time prior to his discharge. Consequently, we conclude plaintiff's complaint also failed to state a cause of action in tort, and it was properly dismissed by the trial court.

With regard to the dismissal with prejudice, the record does not show the plaintiff requested leave to amend. Plaintiff's notice of appeal requests this court to vacate the trial court's order, and remand the cause with directions that Abbott be required to answer the plaintiff's amended complaint. Plaintiff has thus elected to stand on his complaint and has waived the issue. *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 670.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

HOPF and NASH, JJ., concur.