Marilyn S. BOST, Plaintiff,

v.

James RENO, Individually and as Chief of Police of the Village of Bethalto, Defendant.

Civ. No. 86–3485.

United States District Court, S.D. Illinois.

March 4, 1987.

Sharon A. Knapp, East St. Louis, Ill., for plaintiff.

William E. Miller, III., Edwardsville, Ill., for defendant.

MEMORANDUM AND ORDER

STIEHL, District Judge:

Plaintiff, Marilyn S. Bost, filed her complaint against defendant, James Reno, indi-

vidually and as Chief of Police of the Village of Bethalto, claiming that she was fired as chief secretary of the Police Department as a result of her "lack of affiliation" with the new administration in violation of her First Amendment rights in violation of 42 U.S.C. § 1983. Plaintiff had served as dispatcher and as secretary to the preceding Chief of Police, Lewis Drieth.

Defendant has filed a Motion to Dismiss pursuant to 12(b)(6) asserting that plaintiff's complaint does not state a First Amendment cause of action cognizable under § 1983. In the alternative, defendant moves for summary judgment and has attached as evidence the affidavits of James Reno, Lewis Drieth and William Stephenson. Plaintiff has responded to these motions but has not filed any affidavits or other evidence to contradict those filed by the defendant. Pursuant to Local Rule 6(a) this Court finds that oral argument is unnecessary in this instance as the record before it is sufficient.

The initial inquiry in a § 1983 case is whether the conduct complained of deprived plaintiff of a right, privilege or immunity protected by the Constitution. There can be no deprivation of these rights unless the government has a "constitutionally recognized duty to protect the plaintiff." *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985).

The Court must, in considering the Motion to Dismiss, determine whether plaintiff has sufficiently alleged a constitutionally protected right affording her protection under § 1983. Plaintiff alleges at paragraph 3 that she was terminated as a result of her affiliation with the "outgoing" administration and lack of affiliation with the "incoming" administration, and at paragraph 5 that this termination was "politically motivated."

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court addressed the issue of politically motivated discharges. A divided court held that the discharge of non-civilian plaintiff employees by the newly-elected Cook County Sheriff, solely based on their political affiliation, was a First Amendment viola-

tion. *Id.* at 362–73, 96 S.Ct. at 2684–90. The Court stated that "[t]he cost of the practice of patronage is the restraint it places on freedoms of belief and association." *Id.* at 355, 96 S.Ct. at 2680. The result of this system is that "[a]n individual who is a member of the out-party maintains affiliation with his own party at the risk of losing his job." *Id.* Further:

> Since the average public employee is hardly in the financial position to support his party and another, or to lend his time to two parties, the individual's ability to act according to his beliefs and to associate with others of his political persuasion is constrained, and support for his party is diminished.

*Id.* at 355–56, 96 S.Ct. at 2681.

The Supreme Court further found that patronage dismissals impose unconstitutional conditions on the receipt of a governmental benefit and therefore come under the holding of *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

> In *Perry* the Court broadly rejected the validity of limitations on First Amendment rights as a condition to the receipt of a governmental benefit, stating that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command directly.' Such interference with constitutional rights is impermissible."

*Elrod,* 427 U.S. at 359, 96 S.Ct. at 2682–83 (citations omitted). The Court held, therefore, that patronage dismissals "severely restrict political belief and association," and should be limited to policymaking positions only. Discharge of a non-policymaking employee, therefore, constitutes a violation of that employee's First and Fourteenth Amendment rights. *Id.* at 372–73, 96 S.Ct.

at 2689–90. The Court reaffirmed this general principle in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

■ This Court must conclude, therefore, that inasmuch as plaintiff's complaint alleges that she was terminated solely on the basis of her political affiliation, and her position was non-policymaking, her complaint sufficiently alleges activities that constitute a violation of her First Amendment rights. Defendant's Motion to Dismiss is therefore DENIED.

Defendant has moved, in the alternative, for summary judgment and has supported his motion with affidavits. As provided in Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986), quoting *International Administrators, Inc. v. Life Insurance Co. of North America,* 753 F.2d 1373, 1378 (7th Cir.1985).

However, pursuant to Rule 56(c) once a motion for summary judgment has been made, with proper support, the burden then shifts to the opponent who must set forth specific facts to establish that there is an issue of material fact for trial. *Shlay,* 802 F.2d at 920.

> To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial.... A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue.

*Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). The disputed fact must be material, that is, it must be outcome-determinative. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

■ The parties agree that plaintiff is an at-will employee without any employment contract. As such, under Illinois law the employment relationship may be terminated by either party with or without cause. *Criscione v. Sears, Roebuck & Co.,* 66 Ill.App.3d 664, 23 Ill.Dec. 455, 457, 384 N.E.2d 91, 93 (1978). The right to terminate an at-will relationship is subject only to restrictions of any applicable statute or contract. *Id.; Sargent v. Illinois Institute of Technology,* 78 Ill.App.3d 117, 33 Ill.Dec. 937, 940, 397 N.E.2d 443, 446 (1979) *leave to appeal denied.* Plaintiff has not asserted any applicable statutory provisions (or the existence of any contract) that would restrict the Village of Bethalto's right to terminate her employment.

The affidavit of William Stephenson, President (Mayor) of the Village of Bethalto, details a portion of an interview with the plaintiff and her responses:

> Q: If Jim Reno is appointed by the Mayor and approved by the Village Board as Police Chief of this Village of Bethalto, will you be a loyal, dedicated employee of this Department, give your full support to him, take no part in any further act to harm him in any way in the future and to uphold the Police Manual now in force by the Village Board of Bethalto, and could you tell him so?
> A: No I could not.
> Q: What are your future plans, can you support anybody else as the Police Chief, if the Mayor would make an appointment other than, you're saying the only one you couldn't support would be Jim Reno?
> A: Exactly.

Plaintiff has responded generally to the summary judgment motions but has not filed any countervailing affidavits.

The position of secretary to the Chief of Police is of a particularly sensitive nature. It is clear from the affidavits before the Court that the discharge of the plaintiff as

secretary to the newly-appointed Chief of Police was based on her inability to be trustworthy in a position requiring a high measure of security. Plaintiff's failure to rebut this assertion is fatal to the survival of her complaint.

Plaintiff was offered the opportunity to continue her employment with the Village of Bethalto, in a non-sensitive position, as dispatcher (a position she held under the previous administration while also acting as secretary to the Chief of Police), but refused the position. (See the affidavits of James Reno and William Stephenson). The record before the Court establishes that plaintiff *elected* not to continue her employ with the Village by rejecting the offer to continue as dispatcher. The Court finds that plaintiff's dismissal was based on security requirements, not on her political affiliation. There is no question of material fact remaining.

Defendant's Motion for Summary Judgment is GRANTED. The Court directs the Clerk to enter judgment for the defendant and against the plaintiff.

IT IS SO ORDERED.