DAVID N. PRICE, Plaintiff-Appellee, *v.* CARMACK DATSUN, INC., d/b/a Carmack Car Capitol, Defendant-Appellant.

Fourth District   No. 4—83—0464

Opinion filed June 7, 1984.

Bruce Meachum, of Meachum & Meachum, of Danville, for appellant.

Glenn A. Stanko, of Reno, O'Byrne & Kepley, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

The principal issue in this appeal is whether plaintiff, an employee who alleged that he was discharged for submitting a claim under the group health insurance plan provided by his employer, stated a cause of action based upon the tort of retaliatory discharge. We conclude that plaintiff failed to state a cause of action for retaliatory discharge.

On January 5, 1982, plaintiff, David N. Price, filed a complaint against defendant, Carmack Datsun, Inc., d/b/a Carmack Car Capitol, in the circuit court of Vermilion County. Following a jury trial, the trial court entered an order on February 1, 1983, in favor of plaintiff and against defendant in the amount of $5,525 in compensatory damages and $2,762 in punitive damages.

On appeal defendant maintains that (1) the trial court erred in refusing to grant defendant's motion to dismiss the complaint for failure to state a cause of action, (2) the jury verdict was contrary to the manifest weight of the evidence, (3) the amount of compensatory damages was improper, (4) plaintiff was not entitled to punitive damages, and (5) the trial court erred in allowing a motion *in limine* filed by plaintiff.

By filing a motion to dismiss, a defendant admits the well-pleaded

facts of the complaint and raises an issue of law as to the legal sufficiency of the allegations of the complaint. *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 433 N.E.2d 253.

Here, the complaint contained the following allegations. During the time period pertinent to plaintiff's case, defendant, an Illinois corporation, was in the business of selling new and used automobiles with its principal place of business in Danville. On August 18, 1980, plaintiff, who was employed by defendant as a car salesman, sustained injuries in an automobile accident. These injuries required plaintiff to be hospitalized for approximately three weeks, and caused plaintiff to be off work for over two months. As an employee of defendant, plaintiff was afforded coverage under a group health insurance plan with Massachusetts Mutual Life Insurance Company. Plaintiff's medical expenses, most of which were covered by his group health insurance plan, exceeded $7,000. When plaintiff returned to work on November 26, 1980, Donald Carmack, defendant's president, inquired as to whether plaintiff would submit a claim under his group health insurance plan. In addition, Carmack sought to dissuade plaintiff from filing such a claim. When plaintiff subsequently advised Carmack that he was going to file an insurance claim, plaintiff was discharged from his job as a salesman with defendant.

The complaint also alleged that (1) the discharge of plaintiff by defendant was in "direct retaliation" for plaintiff's submission of his claim for insurance benefits under the group health insurance plan, and (2) as a result of his discharge, plaintiff suffered loss of income due to his "inability to find comparable employment."

Defendant maintains that the trial court erred in denying its motion to dismiss the complaint for failure to state a cause of action because Illinois law does not recognize a cause of action in favor of a former employee and against a former employer for retaliatory discharge for submitting a group health insurance claim.

The leading Illinois authorities on the tort of retaliatory discharge are the cases of *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. In the *Kelsay* and *Palmateer* cases the supreme court formulated a rule granting a civil cause of action in certain circumstances to an employee under an "at will" employment relationship who is discharged by his employer in retaliation for certain conduct by the employee.

In *Kelsay*, the supreme court announced that, for the first time in Illinois, a cause of action should exist for retaliatory discharge in order to uphold and implement the public policy evinced by the Work-

men's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*). In its analysis, the court determined that the purpose of the Act would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act.

In *Palmateer*, the supreme court granted leave to appeal to determine the "contours" of the tort of retaliatory discharge. There, plaintiff filed suit against a former employer, alleging wrongful discharge of the plaintiff in retaliation for supplying information to a local law enforcement agency that one of his co-employees might be violating the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 1—1 *et seq.*) and for agreeing to assist in the investigation and trial of the co-employee if requested. The trial court dismissed the complaint for failure to state a cause of action, and the appellate court affirmed. The supreme court reversed and determined that the plaintiff had stated a cause of action under Illinois law, and remanded the case to the trial court for further proceedings.

The supreme court in *Palmateer* determined that a discharged "at will" employee has a cause of action against his former employer if the employee was discharged in retaliation for his activities, and that discharge contravenes a "clearly mandated public policy." As to the meaning of "clearly mandated public policy," the court stated:

> "There is no precise definition of [clearly mandated public policy]. In general, it can be said that public policy concerns what is right and just and what affects the citizens of this State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decision. [Citations.] *** [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878.

The parties have cited no case in which the tort of retaliatory discharge has been extended to a factual situation similar to the one in the case at bar. Plaintiff argues, however, that certain provisions of the Illinois Insurance Code concerning group accident and health insurance claims (Ill. Rev. Stat. 1981, ch. 73, pars. 964 through 982d) constitute the necessary "clearly mandated public policy" required by the *Palmateer* case.

We recognize that section 367 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 979) regulates the issuance and maintenance of group accident and health insurance. For example, section 367 requires that (1) provisions allowing the addition of new family

members be contained in the policy, and (2) dependent coverage continue for at least 90 days upon the death of the insured employee. In addition, section 367e (Ill. Rev. Stat. 1981, ch. 73, par. 979e) contains elaborate provisions which allow for the conversion of group health insurance to individual policies in various situations. However, while the Workers' Compensation Act requires covered employers to provide benefits to employees under certain circumstances, the Illinois Insurance Code does not require employers to provide group health insurance to their employees. The Code merely regulates the terms of such policies that are issued. Accordingly, we conclude that the provisions of the Code do not evince a clearly mandated public policy against an employer's discharge of an employee for filing a group health insurance claim.

We note that section 510 of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. sec. 1140 (1976)) provides:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan \*\*\*." 29 U.S.C. sec. 1140 (1976).

In *Kross v. Western Electric Co.* (7th Cir. 1983), 701 F.2d 1238, the trial court concluded that plaintiff, by alleging that he was discharged for the purpose of depriving him of continued participation in Western Electric's company-provided life and medical insurance plans, stated a claim for damages cognizable under section 510 of ERISA.

Although section 510 may provide a Federal remedy for employer conduct similar to that alleged in this case, we need not pass upon the exact application of ERISA to the case at bar because plaintiff did not allege a violation of ERISA, nor did defendant raise it as a defense. In addition, we conclude that section 510 of ERISA does not evince a "clearly mandated public policy" of this State for the purposes of extending the State common law tort of retaliatory discharge. We note that the *Palmateer* court stated that "clearly mandated public policy" is to be found in the "State's constitution and statutes and, when they are silent, in its judicial decisions." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878.

Because the complaint in this case failed to state a cause of action based upon the tort of retaliatory discharge, we conclude that the trial court erred in denying defendant's motion to dismiss. As a result, we need not pass upon the other issues raised by defendant in this appeal.

For the reasons stated herein, we reverse the judgment entered

by the circuit court of Vermilion County.

Reversed.

MILLS, P.J., and TRAPP, J., concur.