Scott **BUETHE**, Plaintiff-Appellant,

v.

**BRITT AIRLINES, INC.,**
**Defendant-Appellee.**

No. 85-2177.

United States Court of Appeals,
Seventh Circuit.

Argued March 4, 1986.

Decided April 9, 1986.

Stephen L. Trueblood, Trueblood, Harmon, Cater & Cook, Terre Haute, Ind., for plaintiff-appellant.

Scott Smith, Ford & Harrison, Atlanta, Ga., for defendant-appellee.

Before BAUER, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

This case, in which Scott Buethe complains about being fired as a part-time copilot by Britt Airlines, is before us for the second time. Buethe's original complaint, filed in an Indiana state court in 1980, alleged that by firing him Britt Airlines had violated both the Federal Aviation Act, 49 U.S.C. §§ 1301 *et seq.*, and state tort law. Britt Airlines removed the case to federal district court on the basis of Buethe's federal claim. The district judge granted Britt Airlines' motion for summary judgment on both claims, and dismissed the complaint. Buethe appealed, but contested only the dismissal of the state law claim.

The appeal encountered a jurisdictional problem. While Buethe's state law claim was a proper pendant to his federal claim, the dismissal of the federal claim before trial ordinarily requires that any pendent state law claim be dismissed as well, unless, of course, there is an independent basis of federal jurisdiction over that claim —diversity. We remanded the case for a determination of whether Buethe and Britt Airlines had in fact been of diverse citizenship when the suit was filed and removed. 749 F.2d 1235, 1242 (7th Cir.1984). (Diversity must exist on both dates—filing and removal. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777–78 (7th Cir.1986). But no material change occurred in the one-month interval between the filing and the removal of Buethe's case.)

On remand, Buethe filed an amended complaint (intended, of course, to relate back to the original complaint, see Fed.R. Civ.P. 15(c)), in which he alleged that when the suit was originally filed he had been a citizen of Indiana and Britt Airlines "an Illinois corporation." The allegation concerning Britt Airlines was insufficient to establish diversity. For diversity purposes a corporation is a citizen both of the state in which it is incorporated and of the state in which it has its principal place of business. 28 U.S.C. § 1332(c). From the common but erroneous form of allegation used by Buethe it is impossible to tell whether his intention was to allege that the defendant merely was incorporated in the state named, or both was incorporated there and had its principal place of business there. Form 2(a) of the Forms Appendix to the Federal Rules of Civil Procedure shows the proper manner of alleging corporate citizenship (see also Note of Advisory Committee on the 1961 Amendment to Form 2; *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 529–30 (7th Cir.1985)), and we wish that the bar of this circuit would follow it. The failure to do so here was especially inexcusable, given that we had remanded the case expressly for a determination of whether there was diversity jurisdiction.

■ Britt Airlines, however, in its amended answer properly alleged that at the time of the suit it both was incorporated in Illinois and had its principal place of business there. But then it spoiled things—or tried to—by offering proof of these jurisdictional facts by attaching its articles of incorporation, showing its registered office to be in Illinois. All this proved, however, was that it was incorporated in Illinois, which everyone knew. The registered office is just an address required by the incorporating state. It could be a mail drop or a lawyer's office. It need not be, and is not deemed, the corporation's principal place of business; otherwise the state of incorporation and state of principal place of business would always be the same. The principal place of business—under the law of this circuit anyway—is where the corporation's nerve center is. E.g., *Kanzelberger v. Kanzelberger, supra,* 782 F.2d at 777.

■ We have concluded, however, though with some reluctance, that diversity jurisdiction was adequately if clumsily established. If the essential facts—namely the state or states of citizenship of each of the parties—are properly alleged, and no facts come to light during the proceedings which suggest that the allegations are incorrect, jurisdiction is established without need for any factual inquiry. *Casio, Inc. v. S.M. & R. Co., supra,* 755 F.2d at 530. Any other rule would bog down federal lawsuits hopelessly in the proof of jurisdictional facts. In this case, the amended answer adequately alleged the defendant's citizenship, which if correctly alleged was indeed diverse, and there is no persuasive reason to think that the allegations were false. It is true that the action of Britt Airlines' counsel in attaching the articles of incorporation showing the registered address of the corporation is consistent with an inference that he misunderstood section 1332(c), thought place of incorporation and principal place of business were synonyms, and may therefore have had no factual basis at all for the jurisdictional allegation. But equally he may have attached the articles of incorporation to prove that Britt Airlines was incorporated in Illinois, and attached nothing to show principal place of business because the proof of that fact could not be neatly reduced to a single document. At oral argument we pressed counsel for both parties on Britt Airlines principal place of business back in 1980 (it shifted to Indiana in 1985 as a result of Britt Airlines merger into its parent corporation, which has its principal place of business there, and later to New Jersey when the parent merged into People Express), and were assured that it was indeed Illinois. We have no reason to think otherwise, and while an affidavit would have been preferable to oral assurances, we shall not protract this litigation (now in its fifth year) further with a second remand on jurisdiction.

We come then to the merits. Buethe claims that he was discharged in violation of the common law of Indiana because he refused to fly an unsafe airplane. On two occasions in 1980, Buethe refused to fly the airplane to which he was assigned, because of alleged defects in the plane. In the first incident the plane's "auto-feather system" was defective. The pilot, Swanson, wanted to fly the plane with passengers aboard (according to Buethe), but Buethe refused, and the flight had to be canceled, at some cost to the company. On another occasion, with Swanson again in command, Buethe just before takeoff saw a notation in the plane's log that there was a problem with the wing flaps and while taxiing discovered that a fire warning light was defective. Again Buethe refused to fly the plane. The plane was repaired and took off (with the passengers) after a delay of several hours. Two months later, Britt's chief pilot fired Buethe, on the ground that Buethe had improperly preempted decisions reserved to Swanson as the captain, and (according to Buethe) "that a co-pilot should keep his eyes open and his mouth shut."

■ Buethe had no employment contract with Britt Airlines. Like most American workers who are not unionized, public employees, or tenured college professors, he

was an employee at will, and Britt could fire him for good reasons, bad reasons, or no reasons, without incurring liability to him. See *Ryan v. J.C. Penney Co.*, 627 F.2d 836 (7th Cir.1980), construing Indiana law. But like many other states today, Indiana does recognize a tort of wrongful discharge, limited however—thus far at least—to discharge in retaliation for exercising a statutory right or performing a statutory duty, such as the right to file a workmen's compensation claim. *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 253, 297 N.E.2d 425, 428 (1973); see also *Brant v. Morgan Drive Away, Inc.*, 489 N.E.2d 933 (Ind.1986); *Rice v. Grant County Bd. of Comm'rs*, 472 N.E.2d 213, 215 (Ind.App.1984). Although section 8–21–2–2 of the Indiana Code, on which Buethe relies, requires aircraft operating within the state to conform to federal standards of airworthiness, which the two aircraft that Buethe balked at flying arguably did not do, the statute does not purport to create a right on the part of copilots or other crew members to refuse to fly an aircraft that they believe not to be airworthy. We would be reluctant to imply such a right, when we consider the possible effects not only on discipline but on safety of giving crew members a veto power over the decisions of the captain. Bear in mind that Buethe by his own statement did not merely draw the existence of possible safety hazards to Captain Swanson's attention; he announced that he would not fly the plane. Indiana law does not entitle him to do so and keep his job. *Campbell v. Eli Lilly & Co.*, 413 N.E.2d 1054, 1059–62 (Ind. App.1980), holds that the Indiana tort of wrongful termination does not protect "whistle blowing" as such, if Buethe's conduct could be so described (we think it went further), unless a statute creates a right to blow a particular whistle, and Indiana's aviation statute does not.

We need not consider whether Indiana could create the right that Buethe seeks to enforce without trenching on federal regulation of air safety, including the regulations vesting command authority in the pilot. See 14 C.F.R. §§ 91.29(b), 91.3. Cases such as *World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800, 803 (9th Cir.1978), suggest not. Indiana has not tried to do so.

AFFIRMED.